STATE OF OREGON,
DEPARTMENT OF HUMAN RESOURCES,
*Appellant,*

*v.*

MOCK,
*Respondent.*

(951; CA A36297)

730 P2d 553

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Kendall M. Barnes, Assistant Attorney General, Salem.

Maurice V. Engelgau, Coquille, argued the cause for

respondent. With him on the brief was Engelgau & Woods, Coquille.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In this filiation proceeding, the state sought to establish that defendant is the father of the child so that it could enforce support obligations against him. Judgment was entered in favor of defendant, and the state appeals. It argues that the trial court erred in denying its motion to exclude evidence relating to the mother's marriage or to her husband and in instructing the jury that a child born in wedlock is presumed to be legitimate.

Mother was married in June, 1980. She and her husband separated before Thanksgiving, 1980, reconciled for a brief period in 1981 and then were divorced in July, 1981. Dr. Abbott had performed a vasectomy on the husband in 1974. The husband had also been treated for impotency secondary to diabetes, and both mother and the husband testified that, because of that problem, they had never engaged in sexual intercourse during their brief marriage.

Dr. Wolfe testified that the date of the child's conception was most likely late November or early December, 1980, but could have been as late as mid-December. Mother testified that she and her husband had separated on the day before Thanksgiving in 1980 and that the evening after Thanksgiving was when she met defendant at a party and engaged in sexual intercourse with him. At trial, mother claimed that the date of the separation was the 26th or 27th of November, but in a deposition she had testified that the date of Thanksgiving was November 22 and that the separation was the day before and the intercourse approximately the day after Thanksgiving. The husband testified that the date of separation was about the 20th or 22nd of November. Defendant agreed that he was a participant in a party but claimed that he was very drunk and did not remember having intercourse with mother. He was also unable to remember when the party had actually occurred, although he thought that it might have been earlier in November. Mother testified that she did not have intercourse with any other man during November or December, 1980. At the time when mother was in the hospital for the birth, she named her husband as the father, with his consent, allegedly for the purpose of obtaining insurance benefits. He also paid out of his pocket for items that the insurance would not pay.

Both defendant and the husband submitted to blood tests, which conclusively excluded the husband as the possible biological father of the child. It also established a 92.47 percent probability that defendant is the biological father.

■   The state first asserts that it was error for the court to deny its pretrial motion to exclude all evidence, testimony and reference to the husband on the ground that it would be irrelevant in the light of the blood test excluding the husband as a possible father.[1] It would not have been proper to exclude "any and all * * * reference" (as the state's motion requested) to the husband in this case, because the prior inconsistent statements of mother and the husband are relevant for impeachment of the credibility of both witnesses. The issue of mother's credibility arises from the inconsistent statements about the date of the alleged intercourse with defendant and the credibility of both mother and the husband comes into question from the inconsistent statements to the hospital and to the insurance company asserting that the husband is the child's father. The trial court did not err in denying the state's motion.

The state next argues that the court erred in instructing the jury that a child born in wedlock is presumed to be legitimate. It argues that, when a blood test conclusively proves that the husband could not be the father, the presumption should not be put to the jury.[2] We agree that the instruction was erroneous but only because the presumption statutes do not apply in this situation.

The parties discuss three matters relating to presumptions. ORS 109.070 provides:

---

[1] At the time of the motion, however, the results of the blood test were not yet available, so the basis of the state's argument was only conjecture. According to the record, the state did not renew its motion at any time after the results were presented.

[2] To support that proposition, the state relies on ORS 109.258:

"If the court or administrator finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. If the experts conclude that the blood tests show the possibility of the alleged father's paternity, admission of this evidence at trial is within the discretion of the court, depending upon the infrequency of the genetic marker."

The state did not ask for an instruction on that statute.

"The paternity of a person may be established as follows:

"(1)   The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2)   A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption."

OEC 311(1)(v) provides:

"The following are presumptions:

"* * * * *

"(v)   A child born in lawful wedlock is legitimate."

The court instructed the jury:

"The respondent contends that Wanda Guernsey was married at the time of conception of her child * * * to one David Whalen. The law recognizes that a child born in lawful wedlock is legitimate. This is a presumption. The law presumes that. That presumption can be overcome. In this case the petitioner contends that the child * * * is illegitimate. I instruct you that if you find that the defendant * * * proved that Wanda Guernsey was married to David Whalen at the time that [the child] was conceived, then the petitioner, the State of Oregon, has the burden of proving that the child * * * is illegitimate."

The court could not have been instructing on the basis of ORS 109.070(1), because that presumption is said in the statute to be conclusive,[3] if applicable, and is not subject to being overcome as the instruction indicates. Furthermore, by its plain language, ORS 109.070(1) does not apply in this instance, because the uncontradicted testimony of the husband's doctor is that he performed a vasectomy on the husband and that a vasectomy results in permanent sterility.

The other two presumptions do not apply to this case, because they both refer to a child *born* in wedlock. The child in

---

[3] In *Hodge and Hodge,* 301 Or 433, 722 P2d 1235 (1986), the court said that, despite the express terms of the statute, it does not create a conclusive presumption but a rule of substantive law. That has no bearing on this case.

this case was born September 9, 1981, and mother's and the husband's marriage dissolution was final in July, 1981. Mother and the husband were not married at the time when the child was born, and the born-in-wedlock presumptions cannot apply.[4]

Reversed and remanded.

---

[4] The instruction in this case was erroneous in any event, because the court asserted that a rebuttable presumption would arise if the child was *conceived* in wedlock. The statutes only create a rebuttable presumption if the child was *born* in wedlock.